UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

ROY DON BUNCH, )
        Plaintiff, )
         )
v. ) NO. 2:10-CV-122
         )
COMMISSIONER OF INTERNAL )
REVENUE SERVICE, )
        Defendant. )

**MEMORANDUM OPINION AND ORDER**

This is a civil action filed by Roy Don Bunch ("Plaintiff" or "Bunch") for the refund of taxes paid pursuant to 26 U.S.C. §§ 6672 and 7422 in the amount of $193,951.90, plus interest, attorney's fees and expenses. A bench trial was conducted on January 24, 2012. For the reasons which follow, plaintiff's complaint will be DISMISSED and judgment entered in favor of defendant.

**I. Findings of Fact**

The Court makes the following findings of fact based on plaintiff's complaint, defendant's answer thereto, the stipulations of the parties as reflected in the final pretrial order, and the proof at trial:

    1.    Perceptions, Inc. ("Perceptions") is a nonprofit corporation formed and qualified to do business in the state of Tennessee on June 7, 2004. The incorporators and initial directors were Deneen Bunch, Dr. Ben Brooks ("Brooks"), and T. Bruce Ingle ("Ingle"). Ingle was the corporation's initial registered agent.

    2.    Perceptions provided supportive living services, including transportation, nutrition, and care for developmentally disabled clients.

3. Among other things, the charter of Perceptions provided that "[t]he Board of Directors shall have full control over and shall authorize the exercise of all its corporate affairs."

4. Articles of Amendment to Perceptions' charter were filed with the Tennessee Secretary of State on February 24, 2005. The initial directors were replaced by Bunch, Leon Shoemaker and Gerald Farley. The documents submitted to the Secretary of State were signed by Bunch as Chairman of the Board. Bunch also became the registered agent.

5. Bunch was Chairman of the Board of Perceptions from its initial organization until its dissolution.

6. Perceptions filed an annual report with the Secretary of State on May 31, 2006. The report, signed by Ingle as "Director Operations," listed Bunch as president.

7. On December 1, 2004, Perceptions submitted to the Tennessee Department of Mental Retardation Services ("DMRS") an "Updated Provider Application For Long Term Supports," along with a cover letter addressed to the DMRS Deputy Commissioner. The cover letter is signed by "Don Bunch, Board Chairman."

8. Attached to the December 1, 2004 application submitted to DMRS is a document entitled "Narrative Section" which refers to Bunch as "Board Chairman, CFO and principal." The narrative further states that Bunch "will play an active role in overall organizational service and financial management and will supervise the Executive Director."

9. The December 1, 2004 application further states that Perceptions "shall be governed by a local Board of Directors" and that the "Executive Director will report directly to the Board Chairman."

10. The December 1, 2004 application also includes the statement that "we [Perceptions]

2

strongly feel that the combined experiences of our potential and current staff, along with the principals, adequately meets acceptable successful management of similar services." The narrative section further states that monthly financial reports will be made to the Board of Directors.

11. The narrative section of the December 1, 2004 application was signed by Beth Blazer, Finance Director, Perceptions, and copied to Bunch.

12. Perceptions operated a separate division called Bendell Services ("Bendell") through which it provided treatment to individuals suffering from drug and alcohol addiction. Bendell's revenue came from sources other than DMRS.

13 Bendell revenues were deposited into the Perceptions' bank account and transferred to Bendell as needed to meet its financial obligations. Bendell operated out of the same building and with the same EIN as Perceptions. Bendell was chartered as a separate corporation, Bendell Services, Inc., on April 12, 2007.

14. Bunch has been involved in rental or real estate development in Morristown, Tennessee since 1968. He initially rented a building to Perceptions and was asked to serve on a volunteer board. Bunch never collected rent from Perceptions.

15. Bunch made "start-up" loans to Perceptions and made "bridge" loans when Perceptions did not have sufficient funds to pay its bills, serving essentially as a line of credit. Perceptions would usually run out of money to meet its needs around the middle of the month and Bunch would loan money to cover the financial need. Between February, 2005 and August, 2007, Bunch made loans to Perceptions which totaled $648,000,

16. Bunch was usually repaid, at least in part, at the first of the month when DMRS payments were received. In the second quarter of 2006, Bunch was repaid $15,000; $127,318.73

3

in the fourth quarter of 2006; $233,758.82 in the first quarter of 2007; $165,889 in the second quarter of 2009; and $17,000 in the third quarter of 2007.

17. Bunch had no ownership interest in Perceptions.

18. Bunch never received a paycheck from Perceptions, never hired or fired employees, never asked to see the books, never asked if taxes were paid and did not supervise employees.

19. In December, 2006, Bunch learned of a proposal to give raises to Perceptions' employees and requested a telephone conference with Ingle, Brooks and Deneen Bunch. Bunch objected to the raises and no raises were in fact given.

20. Bunch learned that the third quarter 2006 taxes were unpaid in December, 2006.[1] Bunch loaned Perceptions money to pay these taxes and the third quarter taxes were paid.

21. On June 22, 2007, Bunch became actively involved in the financial affairs of Perceptions, assumed responsibility for writing checks for Perceptions, and began operating Perceptions with the intent of making it a viable business.

22. After Bunch became actively involved in the financial affairs of Perceptions and assumed check writing responsibility, approximately $225,000 was deposited into Perceptions' bank account. Payroll was met, some bills were paid, loans were repaid to Bunch and significant money was transferred to Bendell's bank account (Payments for Bendell's services continued to be deposited in the Perceptions' account and then transferred to Bendell. No payments were made, however, to the Internal Revenue Service ("IRS") for current or back taxes.

23. Part of the money deposited into the Perceptions' account in June through September,

---

[1] Bunch's complaint alleged that he became aware of this information in February, 2007; however, Bunch testified that it was in December, 2006.

4

2007, came from DMRS in payment of client services billings. Perceptions received $34,965 in June, $54,000 in July, $84,311.92 in August and $20,812.94 in September.

24. In mid-2007, DMRS began to withhold payments due Perceptions pending an investigation related to claims of lack of RN supervision and Perceptions could not meet payroll. The employees complained to the Tennessee Department of Labor ("DOL"). A representative of DOL arranged for DMRS to release one-half of the funds to Perceptions to meet payroll. Although Bunch claims that DMRS released funds on the "express condition" that those funds be used for net payroll only, Bunch has failed to prove that. In fact, DMRS released more funds than were needed to meet payroll in July and August, 2007.

25. This action follows a lengthy administrative proceeding between Plaintiff and the IRS.

26. On or about March 13, 2008, Judy Thompson, a Revenue Officer with the IRS, sent a letter to Plaintiff informing him that the IRS was assessing a trust fund recovery penalty against Plaintiff under the provisions of 26 U.S.C. § 6672.

27. In the March 13, 2008 letter, the IRS stated that Plaintiff was required to collect, account for, and pay over withheld employment taxes for Perceptions. As a result, the IRS asserted that Plaintiff was individually liable for the trust fund portion of Perception's employment taxes for the second and fourth quarters of 2006 and all four quarters of 2007.

28. On September 28, 2009, the United States assessed Trust Fund Recovery Penalties against Bunch in the total amount of $197,859.26, made up as follows:

>Quarter Ending Amount
>
>06/30/06        $8,310.74

        12/31/06       $31,052.38

        03/31/07       $38,216.67

        06/30/07       $70,268.42

        09/30/07       $48,287.70

        12/31/07       $1,723.35

The amounts owed as of February 10, 2010, totaled $193,251.90.

      29.     On April 10, 2008, Plaintiff's attorney asked Ms. Thompson to provide the factual basis for the IRS's determination that Plaintiff was a responsible person.

      30.     On April 21, 2008, Ms. Thompson sent Plaintiff a copy of Form 4180 Report of Interview with Individual Relative to Trust Fund Recovery Penalty or Personal Liability of Excise Taxes. The form, however, did not explain the basis for the IRS's determination.

      31.     On or about April 25, 2008, Plaintiff filed an appeal to the local appeals office challenging the IRS's determination that Plaintiff was responsible under 26 U.S.C. § 6672 for the unpaid taxes of Perceptions.

      32.     On January 8, 2009, Plaintiff received a letter from Suzanne Magee, a Settlement Officer in the Appeals Office of the IRS, asking Plaintiff to provide sworn statements of fact and to provide the IRS with a copy of the contract between Perceptions, Inc. and the State of Tennessee for funding of net payroll.

      33.     Plaintiff provided the IRS with an affidavit, bank statements, copies of checks, and other documents. The IRS did not provide any explanation for its determination that Plaintiff was a "responsible person" under 26 U.S.C. § 6672 for the second and fourth quarters of 2006 and all four quarters of 2007. The Appeals Office denied Plaintiff's request for a sit down conference but

did conduct a telephone conference.

34. On September 28, 2009, Plaintiff received notification from the IRS informing him of penalties for failure to pay the trust portion of the employment taxes of the Corporation for the second and fourth quarters of 2006 and all four quarters of 2007. This notification did not include a factual or legal basis for the IRS's determination.

35. Upon receipt of the notices of assessment, Plaintiff contacted the Appeals office for an explanation. The Appeals Office claimed that a letter denying Plaintiff's appeal had been mailed to him on May 27, 2009. The IRS's denial letter did not offer an explanation for the decision.

36. On October 27, 2009, Plaintiff filed a form 843, Claim for Refund and Request for Abatement of the Trust Fund Recovery Penalty for the second and fourth quarters of 2006 and all four quarters of 2007. Plaintiff attached an assumption of the facts, a memorandum and documentation explaining the alleged grounds for his Claims for Refund.

37. Plaintiff was informed by the IRS that his claim would be opened for review on January 10, 2010.

38. Only two weeks later, on January 25, 2010, Plaintiff received the Denial of Claim for Refund from the IRS. The denial did not contain an explanation of the IRS's decision.

39. On February 9, 2010, Plaintiff made a payment to the IRS in the amount of $193,951.90 to satisfy the trust fund recovery penalties for the second and fourth quarters of 2006 and all four quarters of 2007.

40. The amounts due for the delinquent trust portions of employment taxes from Perceptions for the second and fourth quarters of 2006 and all four quarters of 2007, as of February 10, 2010, were:

7

Quarter Ending Amount

| Quarter Ending | Amount |
|---|---|
| 06/30/06 | $1,931.92 |
| 12/31/06 | $31,414.86 |
| 03/31/07 | $38,784.59 |
| 06/30/07 | $71,264.76 |
| 09/30/07 | $48,907.05 |
| 12/31/07 | $1,648.72 |

## II. Discussion and Analysis/Conclusions of Law

The Internal Revenue Code requires employers, like Perceptions, to withhold Social Security, Medicare, and Federal Income Taxes from their employees' wages. 26 U.S.C. §§ 3102, 3402. Section 7501 provides that the withheld money is held in trust for the United States until paid to the Treasury on a quarterly basis. 26 U.S.C. § 7501(a); *Slodov v. United States*, 436 U.S. 238, 243 (1978). The withholding taxes "are part of the wages of the employee, held by the employer in trust for the government;" the employer, as a function of administrative convenience, extracts money from the worker's paycheck and briefly holds the money before forwarding it to the Internal Revenue Service. *Gephart v. United States*, 818 F.2d 469, 472 (6th Cir. 1987). The United States must credit employees for the withholdings, whether or not the employer remits the taxes to the Treasury. *Slodov*, 436 U.S. at 243.

Because the funds are held in "trust," "Congress created a rigorous penalty for those who fail to remit the withheld trust fund taxes to the government." *Bell v. United States*, 355 F.3d 387, 392 (6th Cir. 2004). Congress has required that any person required to collect the taxes who willfully fails to pay them over to the government is personally liable for "a penalty equal to the amount of

8

tax evaded, or not collected, or not accounted for and paid over." 26 U.S.C. § 6672(a). It is well established that trust fund liability attaches under § 6672(a) if an individual (1) is responsible for paying the taxes, and (2) willfully fails to turn over the tax money to the government. *Bell*, 355 F.3d at 393 (citing *Kinnie v. United States*, 994 F.2d 279, 283 (6th Cir. 1993); *McDermitt v. United States*, 954 F.2d 1245, 1250 (6th Cir. 1992)).

Because tax assessments by the United States are presumptively correct, *see United States v. Flor D'Italia, Inc.*, 536 U.S. 238, 243-44 (2002); *McDermitt*, 954 F.2d at 1251, the assessment itself constitutes presumptive proof of the taxpayer's liability and shifts the burden to the taxpayer of showing that the assessment is inaccurate. *Bell*, 355 F.3d at 393 (citing *Collins v. United States*, 848 F.2d 740, 742 (6th Cir. 1998)). In an action such as this, the taxpayer must therefore prove by a preponderance of the evidence that he is not a responsible person who willfully failed to pay over trust fund taxes. *Id*.

The test for determining the responsibility of a person under § 6672 is "essentially a functional one, focusing upon the degree of influence and control which the person exercised over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payments to creditors." *Gephart*, 818 F.2d at 473. A company may have more than one responsible person. *Id.* "[L]iability is predicated upon the existence of significant, as opposed to absolute, control of the corporation's finances" and is basically a factual inquiry. *Id.* "Responsibility for purposes of Section § 6672 is a matter of status, duty, and authority." *Id.* at 475 (citing *Mazo v. United States*, 591 F.2d 1151, 1153 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S. Ct. 82, 62 L.Ed. 2d 54 (1979)).

Courts have examined a nonexclusive list of facts or in determining whether individuals are

9

responsible for the payment of taxes withheld from the wages of employees. Among the factors considered are: "(1) the duties of the officer as outlined by the corporate by-laws; (2) the ability of the individual to sign checks of the corporation; (3) the identity of the officers, directors, and shareholders of the corporation; (4) the identity of the individuals who hired and fired employees; (5) the identity of the individuals who were in control of the financial affairs of the corporation." *Gephart*, 818 F.2d at 473 (citing *Braden v. United States*, 318 F.Supp. 1189, 1194 (S.D. Ohio, 1970), *aff'd*., 442 F.2d 342 (6th Cir.), *cert. denied*, 404 U.S. 912 (1971)). Other factors considered include whether the person had access to the company's books and records, *see Cooper v. United States*, 827 F.Supp. 1309, 1314 (E.D. Mich. 1993), *aff'd*., 66 F.3d 325 (6th Cir. 1995) (Table), and whether the individual has made personal loans to the company. *See United States v. Schock*, 2003 WL 21475252, at * 4 (D. Del. June 17, 2003); *Pitts v. United States*, 2001WL 522393, at * 1 (D. Ariz. April 18, 2001); *IRS v. Blais*, 612 F.Supp. 700, 707 (Dist. Mass. 1985). A person "may not escape liability by delegating the task of paying over the taxes to someone else." *Kinnie* 994 F.2d at 284 (citing *Gustin v. U.S. I.R.S.*, 876 F.2d 485, 491 (5th Cir. 1989); *Thomsen v. United States*, 887 F.2d 12, 17 (1st Cir. 1989)).

As noted above, even though a person may be a responsible person, trust fund liability also requires willful conduct. 26 U.S.C. § 6672. "Willfulness is present if the responsible person had knowledge of the tax delinquency and knowingly failed to rectify it when there were available funds to pay the government." *Gephart*, 818 F.2d at 475. "The responsible party need not exhibit an intent to defraud the IRS or some other evil motive; all that is necessary to demonstrate willfulness is the existence of an intentional act to pay other creditors before the federal government." *Bell*, 355 F.3d at 393 (citing *Collins*, 848 F.2d at 742; *Calderone v. United States*, 799 F.2d 254, 260 (6th Cir.

10

1986)).

While willfulness may not be established by proof of mere negligence, willful conduct also includes "a reckless disregard for obvious or known risks . . . ." *Gephart*, 818 F.2d at 475 (quoting *Calderone*, 799 F.2d at 259-60) (quoting *Bolding v. United States*, 215 Ct. Cl. 148, 565 F.2d 663, 672 (Ct. Cl. 1977)). A person may not "immunize himself from the consequences of his actions by wearing blinders which will shut out all knowledge of the liability for and the nonpayment of his withholding taxes." *Calderone*, 799 F.2d at 260 (citing *Bolding*, 565 F.2d at 674). A person is liable under the reckless disregard standard if he (1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily. *Phillips v. United States Internal Revenue Service*, 73 F.3d 939, 942 (9th Cir. 1996).

Bunch acknowledges that he was a person responsible for the payment of taxes under § 6672 after June 22, 2007; he disputes, however, that he was a responsible person prior to that date. Bunch has not carried his burden of proving that he is not a responsible person under § 6672 for the entire period at issue in this case. Indeed, the evidence in the record strongly suggests just the opposite. Bunch admits that he has been Chairman of the Board of Perceptions since its beginning. Although he was not listed as one of the initial directors in the corporation's initial filings with the Tennessee Secretary of State, he was clearly so identified in additional filings just months later. Under the Perceptions' charter, the board of directors clearly had full control over the exercise of corporate affairs.[2] It was clearly represented to DMRS that Bunch would "play an active role in overall

---

[2] The CIR relies, in part, on the provisions of the Tennessee Nonprofit Corporation Act, *Tenn. Code Ann*. § 48-51-101, *et seq*., which, among other things, requires directors and officers of nonprofit corporations to discharge their duties in good faith and in the best interest of the corporation. The CIR argues that this

11

organizational and financial management" of Perceptions and supervise the executive director, who was to report directly to Bunch. Monthly financial reports were made to the board of directors.

Although Bunch had no ownership interest in the corporation, did not hire or fire employees or have check writing authority, he clearly exerted significant and substantial control over the financial affairs of Perceptions by acting as a de facto line of credit for the corporation. Bunch made "start-up" loans and "bridge" loans to Perceptions throughout its existence, enabling him, if he chose, to exercise almost total control over the corporation, certainly to the extent of assuring payment of trust fund taxes. Bunch had the status, as Chairman of the Board and a director, and the authority and duty necessary to be a responsible person. In fact, he had the ability to force Perceptions out of business by simply withholding his periodic loans from the corporation. That he did not assume actual check writing authority until June, 2007, rather than indicating that he was not a responsible person, simply illustrates his ability to assume that responsibility at any time. Further, his actual ability to influence corporate decisions is illustrated by his intervention with respect to the proposed pay raises in December, 2006.

Bunch points to his "nominal" role and lack of actual knowledge of the corporation's affairs as significant. He asserts that he possessed no influence and control over the financial affairs of Perceptions. His arguments lacks merit. Whether he exercised his authority or acquired actual knowledge of financial affairs is largely irrelevant. He could have exercised his authority at any time; likewise, he could have obtained information about the financial affairs of the corporation by

---

statutory authority and statutory duty establish Bunch a "responsible officer." To the extent that CIR argues that the statutory provisions alone make a director a "responsible person" under § 6672, this Court finds it unnecessary to address that claim. In the context of this case, the duty and authority of the directors is clearly set out in the corporation's charter.

simply asking for the information. Yet, Bunch never asked for financial reports or inquired about the status of trust fund tax payments, despite knowing of the corporation's financial difficulties encountered about the middle of each month. The fact that he chose not to exercise his authority or acquire available knowledge does not absolve him of responsibility to see that the withholding taxes were paid. *See Kinnie*, 994 F.2d at 284 (citing *Thomsen*, 887 F.2d at 17 (holding that taxpayer was responsible person where taxpayer was treasurer of delinquent corporation and 45 percent shareholder of its parent, even though taxpayer had never handled the day-to-day operation and had no direct involvement at all with the corporation during the quarters at issue)).

  The record in this case likewise establishes that Bunch has failed to meet his burden of proving that he did not willfully fail to pay the withholding taxes over to the government. As set forth above, willfulness is present if the responsible person had knowledge of the taxes owed and failed to pay them when there were available funds to pay the government. The record in this case establishes that throughout the entire period of time at issue, Perceptions had access to sufficient funds from which the delinquent taxes could have been paid. In fact, the amounts paid to Bunch personally in repayment of his loans to the corporation were more than sufficient to meet the company's withholding tax liability. Even if Bunch did not have actual knowledge of the tax delinquency, his conduct in this case clearly constitutes the requisite recklessness to meet the willfulness element. Bunch clearly should have known of the clear risk that withholding taxes were not being paid, if, from nothing more, the fact that he was required to loan money to Perceptions near the middle of each month for it to meet its financial obligations. He was thus fully aware of the corporation's financial difficulties and he had complete access to the corporation's books of accounts and the monthly financial reports to the board of directors. Even if those reports were not

13

forthcoming, he clearly had the authority to ask for those reports at any time. As noted by the Sixth Circuit, Bunch cannot avoid liability by "wearing blinders" to avoid obtaining actual knowledge of the tax delinquency.

By his own admission, Bunch had actual knowledge of the tax delinquency in December, 2006. If a responsible person subsequently learns that the company owes payroll taxes from a prior quarter, but nonetheless continues using company funds to pay other creditors, or allows funds to be disbursed to other creditors, the person's conduct is willful. *See Kinnie*, 994 F.2d at 285. Once a responsible person learns of the delinquent taxes, that person has an absolute duty to use all available corporate funds to pay off the deficiency. *Id*. Failure to use available, unencumbered funds to pay the tax delinquency is willful conduct. *Id.* at 286.

Subsequent to Bunch's actual knowledge of a tax delinquency, Perceptions continued to expend significant sums of money to pay other creditors, to meet payroll, and to repay loans which Bunch had made the corporation. In addition, substantial funds were transferred from the Perceptions' account to Bendell's account. Not only that, Bunch acquired complete access to, and control over, the financial records and financial affairs of the corporation in late June, 2007. In the months of July and August alone, corporate funds which exceeded the amount of the total tax delinquency was paid to employees, creditors and to Bunch himself.

Bunch, of course, argues that the only funds which became available to him in July and August were encumbered funds over which he had no discretionary authority to determine how they were distributed. He correctly argues that a responsible person is not liable under § 6672 when the funds available to the corporation are encumbered. *Huizinga v. United States*, 68 F.3d 139 (6th Cir. 1995). "Funds are considered encumbered 'only where the taxpayer is legally obligated to use the

14

funds for a purpose other than satisfying the preexisting employment tax liability and [the] legal obligation is superior to the interest of the IRS in the funds.'" *Huizinga,* 68 F.3d at 145 (quoting, *Honey v. United States*, 963 F.2d 1083, 1090 (8th Cir.), *cert denied*, 121 L.Ed.2d 598, 113 S. Ct. 676 (1992)). Bunch argues that the only funds available to the corporation during this period of time were either funds released by the State of Tennessee on the express condition that the funds be used to pay the net wages of employees or which belonged to Bendell and that Perceptions simply did not have funds from which the tax delinquency could be paid.

As noted in the Court's findings of fact, however, Bunch has not established that the funds released by the State of Tennessee to Perceptions were "encumbered" to the extent that they could not be used for a purpose other than satisfying the employment tax liability. Bunch produced no documentary evidence of such a condition nor did he offer the testimony of any witness with direct knowledge from which the Court could make such a conclusion. Bunch has shown no statutory or regulatory requirement that the funds from DMRS be used only for net payroll, *see Bell*, 355 F.3d at 396, and "[t]he burden of demonstrating that funds are encumbered rests on the taxpayer." *Huizinga*, 68 F.3d at 145 (citing *Collins*, 848 F.2d at 742). At best, Perceptions had a contractual obligation to DMRS to use the funds to pay only net payroll. Such an obligation is not sufficient to establish the funds as encumbered in this context. *Bell*, 355 F.3d at 396.

Although the failure to pay employee wages or other creditors is not an attractive prospect, it is "no excuse . . . as [Bunch] could have shut down the company, suspended operations, filed for bankruptcy, applied for a . . . loan . . ., or simply violated [Perceptions'] contract with [DMRS] instead of failing to fulfill [Perceptions'] tax debt. None of these options is attractive or enviable, but in the eyes of § 6672(a), they are the correct choices." *Id*. at 397. Furthermore, "[i]t is no

15

excuse that . . . the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern-the government cannot be made an unwilling partner in a floundering business." *Id*. (quoting *Brewery Inc. v. United States*, 33 F3d. 589, 593 (6th Cir. 1994).

In sum, Bunch has not met his burden of proof by a preponderance of the evidence that he is not a responsible person who willfully failed to pay over trust fund taxes. For the reasons set forth herein, Bunch's complaint will be DISMISSED and judgment entered in favor of the Commissioner of Internal Revenue Service.

So ordered.

ENTER:

> s/J. RONNIE GREER
> UNITED STATES DISTRICT JUDGE

16

Case 2:10-cv-00122   Document 54   Filed 03/08/12   Page 16 of 16   PageID #: 385